UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JILL OTIS,

        Plaintiff,

  v.                                    Case No. 16-C-285

KAYLA J. DEMARASSE,

        Defendant.

**ORDER DENYING MOTION FOR SANCTIONS**

This case is before the court on Plaintiff's motion to sanction the attorney for a witness whom Plaintiff's attorney sought to depose as part of the discovery in her case. The underlying action seeks damages under 42 U.S.C. § 1983 from Kayla J. Demarasse, a Village of Waterford police officer, who Plaintiff claims "made an unreasonable search and seizure of her person, falsely imprisoned her, imposed cruel and unusual punishment upon her, made a warrantless detention of her, and violated her rights to personal freedom and due process by refusing to allow her to obtain medical treatment after suffering from significant blood loss and anemia." Am. Compl. ¶ 2, Dkt. No. 33. The claims arise out of Officer Demarasse's arrest of Plaintiff on suspicion of operating while intoxicated (OWI) with a child in the vehicle in the early morning hours of September 16, 2014. Federal jurisdiction exists under 28 U.S.C. §§ 1331 and 1343.

**I. BACKGROUND**

    **A. The Allegations of the Amended Complaint**

Before turning to the motion itself, it will be helpful to set forth the allegations of the amended complaint. Although Officer Demarasse's report tells a substantially different story,

Plaintiff's allegations are sufficient to show the context in which the deposition occurred and out of which Plaintiff's motion for sanctions arises. According to the amended complaint, Plaintiff was stopped by Officer Demarrase while driving southbound on State Highway 164 in Waterford, Wisconsin, with her son riding as a passenger. Officer Demarasse questioned Plaintiff about her whereabouts and where she was going for about three-to-seven minutes, and Plaintiff appeared confused and gave conflicting answers. Even though she did not detect any odor of alcohol emanating from Plaintiff or her vehicle, Officer Demarasse ordered Plaintiff out of the car to perform field sobriety tests. Plaintiff alleges she told Officer Demarasse that she had a hard time doing things due to back issues and that she was "very sick and bleeding heavily," and requested to be taken to the hospital. Although she was walking slowly and swaying from side to side due to the intense pain she was experiencing, Officer Demarasse refused Plaintiff's request to seek medical attention. *Id.* at ¶¶ 10–13. Plaintiff alleges that Officer Demarasse could observe that there were large blood stains on the back of her shirt and pants near her buttocks, and that she had a black plastic bag stuck to her buttocks. Despite her appearance, however, and her repeated requests to be taken to the hospital, Plaintiff alleges that Officer Demarasse took her directly to the Waterford Police Department, where a blood sample was drawn and she was eventually provided clean clothing. *Id.* at ¶¶ 14, 19. She was then transported to the Racine County Jail where she was held until the following day.

Upon her release, Plaintiff alleges that she immediately sought medical attention at the local hospital for symptoms of lethargy and severe uterine bleeding. She was diagnosed with acute blood loss anemia secondary to dysfunctional uterine bleeding, severe iron deficiency anemia, uterine fibroids, and hypertension. The blood sample taken from her at the time of her arrest was eventually

2

subjected to testing which detected no traces of alcohol or controlled substances, and the state charge against Plaintiff for Operating Under the Influence with a minor in the vehicle was dismissed. *Id.* at ¶¶ 27–31. Based on these allegations, Plaintiff claims Officer Demarasse violated her constitutional rights.

### B. The Deposition

It was at the deposition of Racine County Sheriff Deputy Kevin Burke that the events giving rise to the motion before the court occurred. Deputy Burke was a certified Drug Recognition Expert (DRE) for the County. Because Officer Demarasse did not detect any odor of alcohol on Plaintiff or her vehicle and Plaintiff claimed she was physically unable to complete the sobriety field tests, Officer Demarasse asked for Deputy Burke's assistance in determining whether Plaintiff was under the influence at the time she was stopped. Plaintiff's counsel undertook to take Deputy Burke's deposition as part of his discovery in the case on January 14, 2019. In the hope of providing some guidance to the parties, as well as other attorneys confronted with similar issues, I will describe the objections made at the deposition and the discussion surrounding them in some detail.

Counsel for Deputy Burke's first objection, which appears on page 5 of the transcript, is to the form of the question "What is your background prior to 20 years with Racine County?" Counsel for Burke stated: "Object to form, vague. You can answer if you understood it." Transcript (Tr.) 5:7–10, Dkt. No. 43-1. Deputy Burke then asked for clarification, and Plaintiff's attorney instructed the witness to "tell me about your educational background." *Id.* at 5:14. Deputy Burke thereupon described his educational background.

The next objection appears on page 12 of the transcript when Plaintiff's counsel asks Deputy Burke, "You had done this [responded to a summons for a DRE] many times in the past. Is that

3

fair?" Deputy Burke's counsel again objects, stating "Form. Object to form. Go ahead. You can answer if you understood it." Deputy Burke then asked Plaintiff's counsel to clarify the word "many." *Id.* at 12:21–13:1. Plaintiff's counsel then asked Deputy Burke how many times he had been dispatched to a scene because of his DRE qualifications. Similar objections are made to questions as to form on pages 14, 16, and 17 of the transcript, adding as grounds on some, "vague as to time," "multiple, vague," and "it's vague," but always with the instruction to Deputy Burke that he should answer or answer if he understands.

It's not until the sixth objection on page 19 that Plaintiff's counsel asks for clarification. Plaintiff's counsel asked, "So a big part of your job, I'm assuming, is responding to emergencies such as motor vehicle accidents and other events in which people are injured or hurt. True?" Counsel for Deputy Burke objected, stating "Object to the form of the question. You can answer." At that point, Plaintiff's counsel asked, "What's wrong with the form of the question, Jake?" Counsel for Deputy Burke responded: "It's multiple." Plaintiff's counsel replied: "I don't care if it's multiple. There isn't an objection based on the state of Wisconsin [sic] on multiple." Counsel for Deputy Burke tried to explain, "It's the form of the question. You asked two questions." Plaintiff's counsel then begins arguing with Deputy Burke's attorney over whether his question was multiple, threatened to call the judge, and despite having asked for clarification, insisted he limit his objections to "form and foundation." *Id.* at 19:13–20:12.

Shortly thereafter, counsel for Deputy Burke objects to the form of a question, adding "It's leading." There follows a discussion of whether Deputy Burke, who was not a party and works for a different law enforcement agency, was an adverse witness of whom Plaintiff's attorney could ask leading questions, *see* Fed. R. Evid. 611(c)(2), at the conclusion of which Plaintiff's counsel insists

4

that counsel for Deputy Burke has "no right to interfere in the process like this" and accuses him of acting unprofessionally and trying "to trip me up and interfere with the process." Tr. 22:2–23:14. When Plaintiff's counsel resumes asking Deputy Burke questions, Deputy Burke's attorney objects to the form of a question six times over the next sixteen pages of the transcript, all except once stating only "object to the form" and instructing his client to answer. On one occasion, he added the question, "Where?"

The already evident irritation of Plaintiff's counsel with the attorney for Deputy Burke increased even more as he began asking Deputy Burke about the amount of blood he observed on Plaintiff's shirt and pants when he arrived at the scene to evaluate whether she appeared under the influence of an intoxicant or other drug. It is not hard to see why. Plaintiff's theory of the case is that Officer Demarasse ignored the apparent cause of Plaintiff's disorientation at the time she was pulled over—namely, extreme blood loss—and instead of immediately taking her to the hospital for medical treatment, arrested her for operating while intoxicated and hauled her off to jail. A crucial underpinning of Plaintiff's claim, then, is that it was readily apparent that she was bleeding profusely at the time of the stop.

At this point, it should be noted that according to Officer Demarasse's report, Plaintiff never said she was in need of medical treatment. When asked about the "large fresh blood stain on the back of her shirt near her buttocks" at the scene, she replied, "I have my period." When Officer Demarasse asked her why she was not wearing a pad or tampon, she simply replied, "Because." Dkt. No. 9-2 at 13. Deputy Burke recounted essentially the same conversation in his testimony. Tr. 55:21–56:19. Officer Demarasse also states in her report that she did in fact transport Plaintiff from the scene to the hospital, not the jail, but not for medical treatment. Instead, according to the

5

report, Plaintiff was transported to the hospital for a blood draw as part of the OWI processing. A medical technician at the hospital collected two vials of her blood for testing, and Plaintiff was "given the opportunity to cleanse herself and put on clean hospital scrub pants." Dkt. No. 9-2 at 15.

In any event, in an effort to establish the underpinning for his case through Deputy Burke's admitted observation of "what appeared to be blood" stains on her clothing, Tr. 39:10, counsel for Plaintiff asked, "Well, Officer – Strike that. Your report talks about a large blood stain. Does that ring any bells?" *Id.* at 39:20–22. At that point, counsel for Deputy Burke stated, "Object to the form. If you want to refer to his report . . . ." Counsel for Plaintiff immediately interrupted, saying, "No. I want – Well, he's already told me he looked at it. I'll ask my questions the way I want to ask my question." Counsel for Deputy Burke then responded "Okay. Then I will object to form and foundation." *Id.* at 39:23–40:4. Counsel for Plaintiff then said "That's fine," and offered to "give [counsel] a standing objection on any basis you can think of to any question. Is that fair?" Counsel for Deputy Burke refused, saying he wanted to go "question by question." *Id.* at 40:5–10.

Now convinced even more that the attorney for Deputy Burke was trying to interrupt the process and impede the deposition, Plaintiff's counsel continued to question Deputy Burke about the amount of blood he saw and Deputy Burke's knowledge of the effects of significant blood loss on a person's behavior. *Id.* at 42–46. In addition to the stains of what appeared to be fresh blood on the back of her shirt, a plastic garbage bag was stuck to Plaintiff's backside as she exited her car. Apparently viewing this fact as evidence of blood loss sufficient to put Officer Demarasse on notice of a serious medical problem, counsel for Plaintiff asked Deputy Burke the following question: "Sir, you went to this accident scene. You saw somebody that had significant blood loss. You saw a plastic bag stuck to that person because there was so much blood loss. And you told me it was

6

something you had never seen before, and you described it as very, very odd. Is everything I said accurate?" *Id.* at 47:24–48:5. Deputy Burke responded, saying "There was no accident," as his attorney objected to the form of the question, adding "vague" and, with counsel for Demarasse, "lack of foundation." *Id.* at 48:6–9. Plaintiff's counsel initially denied saying accident, but when the reporter read back his question, withdrew the reference to accident, leaving the remainder of his question unchanged. The same objections were repeated. *Id.* at 48:11–49:6.

His frustration growing, Plaintiff's counsel threatened to terminate the deposition and ask for sanctions. Counsel for Deputy Burke, while at first trying to avoid explaining his objections further so as to avoid a further accusation that he was testifying himself, attempted to explain to Plaintiff's counsel, in response to counsel's threat to walk out and seek sanctions, that his client never said he saw "a lot of blood," but had simply said "he saw a plastic bag stuck to her behind." *Id.* at 49:7–50:9. Deputy Burke said "That's how I was going to respond," but by that time, counsel for Plaintiff said, "That's it. We're done. I'm tired of this. You are not telling this witness how to respond to questions." *Id.* at 50:10–14.

Attempting to defend himself against counsel's further accusation of misconduct, counsel for Deputy Burke explained:

> The form of the question was vague. There was a lack of foundation. I don't believe the witness has testified that he observed a lot of blood at any point in time. In fact, I think the record reflects that he specifically said he saw the plastic bag, and when he saw the blood, there was something that appeared to be blood.

*Id.* at 51:13–19. Plaintiff's counsel again accused Deputy Burke's counsel of testifying, saying "you can say 'form.' That's it." *Id.* at 51:22–52:2.

7

After a short break, the attorneys made one more effort to resume the deposition, during which counsel for Deputy Burke limited his objections to form and foundation. *Id.* at 53:8–56:10. When Deputy Burke finally did answer counsel's question, he testified:

> I can't say the amount of blood. What I found was odd was a woman would let her time of the month get to the point that it leaks through her pants and that she needed to wear–put a garbage bag on her when she had her 11-year-old son in the car. So as far as how much blood was there, I don't know. It was odd to me that any woman would let that happen.

*Id.* at 56:12–19. Soon thereafter, another dispute arose over counsel's refusal to show Deputy Burke his report while asking him questions about its contents. At that point, Plaintiff's counsel announced the deposition was over, telling the other two attorneys: "I'm going home. You guys can tell the judge. I want you sanctioned because this is totally inappropriate. I'm not playing these games, Jake. You have no business doing this." *Id.* at 58:20–23.

Based on this record, counsel claims that the attorney for Deputy Burke and, to a lesser extent, the attorney for Demarasse, disrupted the deposition by their repeated objections and severely impeded his ability to complete the deposition. After 39 objections by counsel for Burke and an additional 16 objections by Officer Demarasse's attorney in the course of seventy minutes, counsel for Plaintiff terminated the deposition and, after complying with Civil L.R. 37's conferral requirement, filed this motion for sanctions, accompanied by a twenty-five page brief in support. Plaintiff's counsel contends that the objections by Burke's attorney "were clearly outside the bounds of the federal rules and the objections were not in compliance with the same." Pl.'s Br. in Supp. at 1, Dkt. No. 42. Counsel argues the behavior of Burke's attorney "is particularly egregious as the witness is not a party to this case. [Plaintiff's] counsel gave Deputy Burke's counsel numerous opportunities to cease this behavior and even gave counsel a standing objection to any question, but

8

counsel refused, instead choosing to disrupt the deposition at every turn." *Id.* at 2. Plaintiff seeks "an order that Deputy Burke's counsel be sanctioned and that the deposition of Deputy Burke be rescheduled so that the examination can be conducted fairly and in the spirit of the federal rules of discovery." *Id.*

## II. ANALYSIS

### A. Law Governing Taking of Depositions

The rule governing the taking of depositions provides: "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). But an attorney does not impede, delay, or frustrate the fair examination of a deponent merely because he objects to questions, even if he does so repeatedly. As courts instruct juries both before and after trial, "[l]awyers have a duty to object when they believe a question is improper." Federal Civil Jury Instructions of the Seventh Circuit 1.06. It is only where an attorney makes repeated improper objections, or engages in other actions, that impede, delay, or frustrate the fair examination of the deponent that sanctions are appropriate.

An attorney representing a witness at a deposition must state his objection "concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). The advisory committee notes say that "[d]epositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond." Fed. R. Civ. P. 30(d), advisory committee notes (1993 amendments). While proper objections may be made, the committee notes instruct that "they ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, i.e., objections on grounds that might be immediately

9

obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer." *Id.* Implicit in the committee commentary is the corollary that objections which need not be made to preserve the objection under Rule 32 should not be made during a deposition. Also implicit in the comments is the suggestion that the attorney taking the deposition may wish to cure any improper question at the time the deposition is being taken rather than await trial when it will be too late to do so.

"Form" objections is a category that includes objections to leading questions, lack of foundation, assuming facts not in evidence, mischaracterization, vague or misleading questions, lack of personal knowledge, speculative, asked and answered, argumentative, and compound questions. *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*, 299 F.R.D. 595, 601 (N.D. Iowa 2014), *vacated on other grounds*, 800 F.3d 936 (8th Cir. 2015). When an attorney decides to assert such an objection, it is generally safest just to state "I object to the form of the question" or "objection–form," assuming opposing counsel is in agreement that by so limiting his objection, counsel is not waiving the more specific objection, such as "vague" or "leading." Asking for the agreement of opposing counsel is important because not all courts agree that merely objecting to the form of the question without stating the specific defect in the form is sufficient to preserve the issue. *Compare Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012) ("But such an objection [to a vague question] to avoid a suggestive speaking objection should be limited to an objection 'to form,' unless opposing counsel requests further clarification of the objection."), *and Druck Corp. v. Macro Fund (U.S.) Ltd.*, No. 02 CIV.6164(RO)(DFE), 2005 WL 1949519, at *4 (S.D.N.Y. Aug. 12, 2005) ("Any 'objection as to form' must say only those four words, unless the questioner asks the objector to state a reason."), *with Sec. Nat'l Bank* , 299 F.R.D.

10

at 602 ("Nothing about the text of Rules 30 or 32 suggests that a lawyer preserves the universe of 'form' objections simply by objecting to 'form.'"). Limiting one's objection to the form of the question, when opposing counsel so requests, will avoid the risk of being accused of making so-called "speaking objections," which instruct the witness how to answer the question. *See Specht v. Google, Inc.*, 268 F.R.D. 596, 598 (N.D. Ill. 2010) ("Objections that are argumentative or that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2)."). And it leaves to opposing counsel the choice of whether to ask for a more specific basis of the objection so that he can either cure the defect in the question or, if none exists, demonstrate the lack of any basis for the objection in the first place. Unless it is obvious the objection is baseless, opposing counsel should normally avail himself of the opportunity to ask for clarification. Indeed, without greater specificity, review by the court may be of little value:

> [U]nless an objector states with some specificity the nature of his objection, rather than mimicking the general language of the rule, i.e., "objection to the form of the question," it is impossible to determine, based upon the transcript of the deposition itself, whether the objection was proper when made or merely frivolous.

*Mayor & City Council of Baltimore v. Theiss*, 354 Md. 234, 729 A.2d 965, 976 (1999).

What an attorney for a witness at a deposition should not do, however, is instruct the witness not to answer a question, unless; (1) the question calls for privileged information, (2) the court has previously ruled the information sought out-of-bounds, or (3) the attorney has concluded that the deposition is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party and intends to seek sanctions. In the words of the rule, "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

11

limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

### B. Application of Law to Facts of Case

Discovery abuse is a serious concern in the legal community. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (noting "the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side"). Moreover, as other courts have recognized, "[p]reventing such abuse depends in part on reducing the reluctance of attorneys to seek sanctions and of judges to impose them." *Sec. Nat'l Bank*, 800 F.3d at 942 (citing *Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir. 1986)). At the same time, courts must exercise care in deciding whether to impose sanctions so as not to sanction attorneys who zealously represent their clients within the bounds of the law and in conformity with the code of professional responsibility, no matter how frustrated their adversaries may find opposing counsel's manner of representation and how confident those adversaries are with their own position. The stakes for an attorney who is subject to a motion for sanctions are high. When accused of acting improperly, "a lawyer or firm's reputation is at stake" because "sanctions act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorney's career." *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 191 (3d Cir. 2002). The purpose of sanctions is to "penalize those whose conduct may be deemed to warrant" them and "deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). But it is a great injustice for a court to publicly punish an attorney who has done nothing wrong and is merely representing his client's interests, albeit zealously, in accordance with the governing rules.

12

Applying these principles to the facts of this case, I note at the outset that counsel for Deputy Burke at no time instructed his client not to answer a question put to him by Plaintiff's counsel. To the contrary, he consistently instructed his client to answer the question after stating his objection. This fact, by itself, distinguishes this case from *Cordero v. City of New York*, No. 15-CV-3436, 2017 WL 2116699 (E.D.N.Y. May 12, 2017), a case Plaintiff cites in support of her motion. In *Cordero*, "defendants' counsel repeatedly instructed Essig not to answer, failed to limit her objections to the statement 'objection as to form,' and threatened to leave the deposition on multiple occasions." 2017 WL 2116699, at *7. The court concluded that "[t]he behavior of defendants' counsel clearly impeded the progress of and unnecessarily extended the length of the deposition, particularly given that certain questions, including whether there were any requirements for memo book entries, were left unanswered." *Id.*

I also note that, in this case, to the extent the specific basis for the objection was stated or is otherwise ascertainable, the objections of Deputy Burke's attorney do not appear improper. For example, a key issue in the case was whether it should have been apparent to Officer Demarasse that Plaintiff had not been driving under the influence of an intoxicant, but was in need of medical attention because of the amount of blood loss. Although there appears to be little doubt at this point that it was blood that had freshly stained Plaintiff's clothes and caused the plastic bag to stick to her backside, a police officer who simply observes the stain during a nighttime traffic stop arguably cannot testify on personal knowledge that it is blood. As Deputy Burke explained several times, all he could say was that it appeared to be blood. Objecting to a question about the blood for lack of foundation was thus not improper.

13

More importantly, considering the real issue in the case, the objections to form by Deputy Burke's attorney to counsel's loaded questions incorporating the phrase "a lot of blood" or "significant blood loss" were likewise proper because the phrases "a lot of blood" or "significant blood loss" are arguably vague as to what quantity is meant. As was also apparent, and as Deputy Burke himself acknowledged, he had no way of estimating the quantity of blood that was present, other than to say it was enough to stain her clothes covering her buttocks and cause the plastic bag she had apparently been sitting on to stick to her when she exited the car. Tr. 56:11–19. In other words, he arguably lacked a foundation for answering the question, making the opposing counsel's objections proper.

Counsel's objections to the form of questions as multiple or compound is also a proper objection. *See Atunnise v. Mukasey*, 523 F.3d 830, 835 (7th Cir. 2008) ("There is a reason why courts disfavor compound questions posed to witnesses during trial; they are likely to elicit an ambiguous response." (citing 81 AM. JUR. 2D WITNESSES § 714 (2008) ("The vice of the compound question is generally recognized, and a question which embraces several questions is improper."))). Yet, when in response to Plaintiff's attorney's request for clarification of an objection to the form of a question, counsel for Deputy Burke explained that the question was multiple, Plaintiff's attorney responded: "I don't care if its multiple" going on to suggest that no such objection was allowed under Wisconsin law. Tr. 19:22–24.

The fact that Plaintiff's counsel didn't know or care whether the form of his question was improper is not a reason for the witness's attorney to refrain from objecting. An attorney concerned about how his client's answers may be used in a future court proceeding may believe it unfair to expect his client to answer questions under oath that contain common but imprecise terms.

14

Regardless of opposing counsel's view of the issue, the attorney must object to the form of the question in order to preserve the issue. *See* Fed. R. Civ. P. 32(d)(3)(B) ("An objection to an error or irregularity at an oral examination is waived if: (i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and (ii) it is not timely made during the deposition."). As long as the attorney does not coach the witness and doesn't instruct him not to answer, he is not acting improperly.

Nor can counsel be faulted for refusing to accept Plaintiff's counsel's offer of a continuing objection. A continuing objection is used to avoid repeated interruptions when a series of questions concerning the same arguably inadmissible evidence is anticipated. *See, e.g.*, *United States v. Moore*, 115 F.3d 1348, 1357 (7th Cir. 1997) (noting continuing objection to propensity evidence offered by government). But Burke's attorney wasn't objecting to a line of evidence; his objections were directed at the form of the individual questions that were asked. Whether the objection is proper depends on the specific question asked. A continuing objection would hardly preserve an objection to the form of a question that had not even been asked at the time the objection was made.

This is not to say that each and every objection to the form of the question asserted by Deputy Burke's attorney would be sustained by the court if it was offered into evidence at trial. For instance, Deputy Burke's attorney at one point objected on the ground that Plaintiff's counsel's question was leading. Tr. 22:2–3. Deputy Burke's attorney thought Plaintiff's counsel was not entitled to ask leading questions because Deputy Burke was not a party and actually worked for a different law enforcement agency. Plaintiff's attorney, on the other hand, thought he could ask Deputy Burke leading questions. The answer is not clear, and reasonable people can disagree.

15

Under Federal Rule of Evidence 611(c)(2), the court should ordinarily allow leading questions "when an attorney calls a hostile witness, an adverse party, or a witness identified with an adverse party." Is Deputy Burke "a witness identified with an adverse party"? In *Ellis v. City of Chicago*, 667 F.2d 606 (7th Cir. 1981), the court held that the district court erred in refusing to allow leading questions during the plaintiffs' direct examinations of two Chicago police officers at the trial of their civil rights action against the City and another officer of the Chicago Police Department for entering their home without a warrant and killing their dog. Like the defendant police officer, the police officer witnesses "were employees of defendant City of Chicago at all times during the litigation and were each present during portions of the incident which gave rise to this lawsuit," the court observed, and both had worked closely with the defendant officer during the period of their employment. *Id.* at 613. While *Ellis* might be read as allowing Plaintiff to ask leading questions of Deputy Burke, there are some significant differences in the facts of the two cases. Unlike the witnesses in *Ellis*, Deputy Burke was employed by a different law enforcement agency than the defendant, and though Deputy Burke was present at the time Officer Demarasse placed Plaintiff under arrest, it is unclear whether they had ever worked together or even met before that day. Thus, neither attorney's position was unreasonable, and they were not going to resolve the issue between themselves at a deposition. It was therefore perfectly proper for Burke's attorney to preserve the issue in the only way the law allows—by making an objection as to the form of the question on the record. Plaintiff's counsel had no grounds for accusing Deputy Burke's attorney of improper conduct. If, as Rule 30(c)(2) requires, the objection was "stated concisely in a nonargumentative and nonsuggestive manner," it should not have unduly disrupted the deposition.

Plaintiff's counsel argues, however, that Deputy Burke's attorney did more than simply state his objection. He contends that Deputy Burke's counsel coached Deputy Burke by adding the word "vague" to several of his objections, and objections to the form of the question on vagueness grounds, counsel suggests, are always improper. In support of this contention, Plaintiff cites *Phillips v. Mfrs. Hanover Trust Co.*, No. 92 CIV. 8527(KTD), 1994 WL 116078 (S.D.N.Y. Mar. 29, 1994). There, the court stopped short of sanctioning the accused attorney for objecting to the form of questions seemingly without any basis, and then elaborating on the reasons for her objections in such a way as to suggest a prearranged strategy had been designed with her client to frustrate the deposition. *Id.* at *3. Despite this egregious conduct, the court declined to impose a sanction on the attorney because Federal Rule of Civil Procedure 30's mandate that objections be "stated concisely in a nonargumentative and nonsuggestive manner" was new. *Id.* at *4. The court did place the attorney on notice, however, that it was not her place "to interrupt if a question is perceived to be potentially unclear to the witness. Rather, the witness should make the determination as to whether a question is clear and answer to the best of her ability." *Id.* From this warning, Plaintiff argues that an attorney who objects to the form of a question and adds the word "vague" is improperly coaching his witness. Pl.'s Reply at 2, Dkt. No. 50.

I do not read *Phillips* to say that it is always improper for an attorney to object to the form of a question and state "vague" as the specific ground. It is clear from the *Phillips* court's description of the attorney's previous conduct in that case that she had been coaching the witness and the court was putting her on notice that such conduct would not be tolerated. To the extent the language used by the court supports a broader interpretation, however, I note that a sister court in the same circuit, also cited by Plaintiff, has more recently observed that "courts in the Second

17

Circuit have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition." *Cordero*, 2017 WL 2116699, at *6. Instead, the court noted, "sanctions have been imposed where counsel's interruptions, while not necessarily in bad faith, included repeated improper instructions for the witness not to answer, preventing the deposing party from completing the deposition." *Id.* (citing *Morales v. Zondo Inc.*, 204 F.R.D. 50, 53–54 (S.D.N.Y. 2001)). Here, it should again be noted, Burke's attorney at no time instructed his client not to answer.

More importantly, the fact that a witness answers a question does not mean that the witness understood it; it may mean that the witness only thinks he understood the question or is too embarrassed to say he does not understand. A good attorney is trained to use language precisely so as to avoid confusion to the extent possible and has a duty to protect his client's interests. In addition, as noted above, some courts believe that simply objecting to the form of a question fails to preserve the "universe of 'form' objections." *Sec. Nat'l Bank*, 299 F.R.D. at 602. An attorney should not be required to risk waiving the argument that his client's answer to a poorly phrased question doesn't mean what opposing counsel thinks it means, and that the answer should therefore not be used against him, simply because making an objection upsets the questioner. The way to avoid objections to the form of questions based on vagueness is to ask more precise questions, not threaten counsel with sanctions for making them.

It is true that when an attorney objects on vagueness grounds, even if he instructs the witness to answer, the witness will more carefully consider the question to look for the vague terms the attorney spotted. But even if the attorney only objects to the form of the question without stating any further grounds, an astute witness is going to more carefully consider the question before

18

answering. As long as there exists a reasonable basis for the objection, it is not improper to assert it, even if it has such an effect. As noted above, it would seem to be the better practice just to object to the form without further clarification unless asked where opposing counsel requests that objections be so limited. This is a matter about which counsel should confer. But Rule 30(c)(2) permits an attorney to state his objection "concisely in a non-argumentative and non-suggestive manner," and an attorney cannot reasonably be sanctioned for complying with the law. Given the holding of some courts, as noted above, that objecting to the form of a question without more is not enough to preserve the specific grounds, the reluctance of some attorneys to so limit their objections, absent such an agreement, is understandable.

I also note that to the extent the attorney for Burke expanded upon and explained the basis for his objections, it was either because Plaintiff's attorney asked him to or was accusing him of misconduct in making the objection in the first place. Indeed, a review of the transcript reveals that much of the delay and argument that Plaintiff's counsel decries was brought on by his own refusal to consider that counsel may have had a good faith reason for his objections and either seek clarification and rephrase his questions, or simply ignore the objections. An attorney accused on the record of misconduct is entitled to defend himself. Since the objections were merely as to form and there were no instructions to the witness not to answer, there was no reason for counsel to engage in such arguments. The deposition could have been completed.

Finally, it appears that the heated dispute that arose in the course of Deputy Burke's deposition grew out of fundamentally different legal cultures. Plaintiff's counsel, it appears, is accustomed to a greater informality in taking depositions where objections are few and far between. Burke's attorney, on the other hand, appears to practice in a culture where the rules governing civil

procedure and the admissibility of evidence are more strictly followed. The rules exist for a reason, however, and it is not improper for an attorney to insist on compliance. With fewer cases being tried, it may be more difficult for attorneys to develop and hone the skills needed to ask precise questions that elicit the information a witness may have on both direct and cross examination. Fewer trials also means that fewer attorneys, and judges for that matter, have mastered the rules of evidence and civil procedure that govern the conduct of both trials and depositions. It is the court's hope that recognition of these difficulties, as well as this decision as a whole, will help attorneys avoid similar difficulties in the future.

In any event, for the reasons set forth above, Plaintiff's motion for sanctions (Dkt. No. 41) is denied.

**SO ORDERED** this   22nd   day of April, 2019.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court